**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Analilia Brice Nash, | No. CV-23-02018-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Analilia Nash's ("Plaintiff") appeal from the Commissioner of Social Security Administration's ("SSA" or "Defendant") denial of social security disability benefits. (Doc. 1). Plaintiff filed her opening brief on December 22, 2023, (Doc. 12), Defendant responded on January 22, 2024, (Doc. 14), and Plaintiff filed a reply on February 2, 2024, (Doc. 15). The Court now rules.

## I.    BACKGROUND

The issues presented in this appeal are the following: (1) whether the administrative law judge ("ALJ") erroneously found that Plaintiff could perform light work prior to May 9, 2021, in the residual functional capacity ("RFC") determination, (2) whether the ALJ erred at step five because the jobs the ALJ listed fell below the minimum significant number of jobs ("SNOJ") standard, and (3) whether the ALJ erred by discounting Plaintiff's symptom testimony.

### A. Procedural Background

Plaintiff filed an application for supplemental security income on May 9, 2017, and

for disabled widow benefits on May 18, 2017, alleging an onset date of May 1, 2016.[1] (Doc. 9-3 at 5). Her claims were denied initially on October 13, 2017, and on reconsideration on March 20, 2018. (*Id.*). A hearing was held on April 16, 2020, and a first ALJ issued a decision that Plaintiff was not disabled. (*Id.*). Plaintiff appealed, and the Appeals Council vacated the first decision because, among other issues, the first ALJ did not consider whether Plaintiff's use of a cane was medically necessary. (*Id.* at 5–6). As such, a new hearing was held on June 13, 2022, before a second ALJ, and the second ALJ issued the decision currently appealed to this Court. (*Id.* at 6). In the currently appealed decision, the ALJ found Plaintiff not to be disabled from the alleged onset date through May 8, 2021, and found Plaintiff to be disabled since May 9, 2021. (*See generally id.*). As such, this appeal covers only the period between May 1, 2016 and May 8, 2021.

### B.  The SSA's Five-Step Evaluation

To evaluate a claim of disability, the Social Security regulations set forth a five-step sequential process. 20 C.F.R. § 404.1520(a)(4) (2016); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through the first four steps, but the burden shifts to the Commissioner in the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows.

First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

At step two, if the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple

---

[1] Plaintiff also filed an application on May 9, 2017, for disability insurance benefits, which was denied because at the time, Plaintiff was not insured. (Doc. 9-3 at 5). As of the date of the second ALJ decision (the one appealed here), Plaintiff was insured, so her claim for disability insurance benefits had been escalated to the hearing level. (*Id.* at 6).

instructions, responding appropriately to co-workers, and dealing with changes in routine. *Id.* § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

At step three, having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "[RFC] based on all the relevant medical and other evidence in [the] case record." *Id.* § 404.1520(e). A claimant's RFC is the most she can still do despite all her impairments, including those that are not severe, and any related symptoms. *Id.* § 404.1545(a)(1).

At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares the RFC assessment with "the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and her "age, education, and work experience." *Id.* § 404.1520(g)(1). If the claimant can perform other work, she is not disabled. If the claimant cannot perform other work, she will be found disabled.

In evaluating the claimant's disability under this five-step process, the ALJ must

consider all evidence in the case record. *See id.* §§ 404.1520(a)(3), 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See* 20 C.F.R. §§ 404.1527, 404.1529; SSR 06-3p, 71 Fed. Reg. 45593-03 (Aug. 9, 2006).

### C. The ALJ's Application of the Five-Step Evaluation Process

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of May 1, 2016. (Doc. 9-3 at 10).

At step two, the ALJ found that Plaintiff has had the following severe impairments: "major depressive disorder, unspecified trauma and stressor disorder, attention deficit hyperactivity disorder, obesity, lumbar and cervical degenerative disease, asthma, migraines, osteoarthritis of the knees, and fibromyalgia." (*Id.*).

At step three, the ALJ found that since the alleged onset date, Plaintiff "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (*Id.* at 12). As such, the ALJ made two RFC determinations for the two relevant time periods. The ALJ found that prior to the established onset date of May 9, 2021, Plaintiff had the RFC to perform light work except that

> she could frequently balance as defined by the SCO and climb ramps and stairs, as well as occasionally stoop, crouch, crawl, kneel, and climb ladders, ropes, or scaffolds. [Plaintiff] could frequently reach overhead bilaterally. She could work with occasional concentrated exposure to non-weather related extreme cold, poorly ventilated areas, and pulmonary irritants, such as fumes, odors, dust, and gases. [Plaintiff] could work with occasional exposure to excessive loud noise, excessive vibration, dangerous moving machinery, and unprotected heights. She could perform work with occasional in person interaction with the public and coworkers. [Plaintiff] could perform work involving understanding, remembering and/or carrying out simple instructions and occasional changes in a routine work setting.

(*Id.* at 15–16).

The ALJ then found that since May 9, 2021, Plaintiff had the RFC to perform sedentary work except that

> she requires a walker for all standing and walking. She could frequently balance as defined by the SCO and climb ramps and stairs, as well as occasionally stoop, crouch, crawl, knee, and climb of ladders, ropes, or scaffolds. [Plaintiff] could frequently reach overhead bilaterally. She could have occasional concentrated exposure to non-weather related extreme cold, poorly ventilated areas, and pulmonary irritants, such as fumes, odors, dust, and gases. [Plaintiff] could have occasional exposure to excessive loud noise, excessive vibration, dangerous moving machinery, and unprotected heights. She could perform work with occasional in person interaction with the public and coworkers. [Plaintiff] could perform work involving understanding, remembering and/or carrying out simple instructions and occasional changes in a routine work setting.

(*Id.* at 27).

At step four, the ALJ found that Plaintiff has no past relevant work. (*Id.* at 28). As such, the ALJ proceeded to step five.

At step five, the ALJ found that transferability of job skills was not an issue because Plaintiff does not have past relevant work. (*Id.* at 29). The ALJ then found that prior to May 9, 2021, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (*Id.*). Specifically, the ALJ provided the following occupation examples from the vocational expert ("VE") testimony: routing clerk, office helper, and order caller. (*Id.*). As such, the ALJ found that, prior to May 9, 2021, Plaintiff was not disabled. (*Id.* at 30). The ALJ next found that beginning on May 9, 2021, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*). The ALJ thus found that Plaintiff became disabled on May 9, 2021, and has continued to be disabled through the date of the ALJ's decision. (*Id.*).

## II.   LEGAL STANDARD

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation omitted). "Substantial evidence" means "more than

a mere scintilla, but less than a preponderance." *Reddick*, 157 F.3d at 720 (internal citation omitted). In other words, substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (internal citation omitted). In determining whether there is substantial evidence to support a decision, the Court considers the "record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the" ALJ's conclusions. *Reddick*, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (internal citations omitted); *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see also Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision and the decision is free from legal error, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g) (2012). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted).

Notably, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. *See Connett v. Barnhart*, 340 F.3d

871, 874 (9th Cir. 2003). Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See id.*

### III.   DISCUSSION

The Court addresses Plaintiff's claims of error in a different order than presented in her brief, beginning with Plaintiff's subjective testimony, continuing to the ALJ's RFC determination overall in light of Plaintiff's alleged cane usage, and concluding with the ALJ's findings regarding a significant number of jobs at step five.

#### A. Discounting Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ failed to provide clear and convincing evidence for discounting Plaintiff's testimony. (Doc. 12 at 15). Specifically, Plaintiff asserts that "beyond questioning the medical necessity of Plaintiff's cane and walker use since 2017, the ALJ did not cite to specific evidence to support any challenge to Plaintiff's credibility." (*Id.* at 15–16). Plaintiff then recites various elements of her testimony that she asserts are salient. (*Id.* at 17–18). As for Plaintiff's migraines, Plaintiff emphasizes that the ALJ does not address Plaintiff's Botox treatment and "the degree to which that helps and does not help," so the ALJ's statements do not detract from Plaintiff's credibility. (*Id.* at 18).

Defendant argues that the ALJ properly partially discounted Plaintiff's subjective complaints because (1) the testimony conflicted with Plaintiff's medical records, (2) there was evidence of effective treatment, and (3) the testimony conflicted with Plaintiff's daily activities. (Doc. 14 at 13). Defendant emphasizes a prior Ninth Circuit decision, *Smartt v. Kijakazi*, 53 F.4th 489 (9th Cir. 2022), in which the plaintiff testified she was unable to walk without an assistive device, but the Ninth Circuit found it proper to discount the testimony because evidence showed she did not consistently use the assistive device. (Doc. 14 at 15). Additionally, Defendant asserts, "Plaintiff testified that she has been working part time (approximately ten hours per week) since 2016," and that "her job involves document preparation and background investigation work." (*Id.* at 17). In sum, Defendant argues that Plaintiff has misread the ALJ's decision. (*Id.* at 18–19).

In assessing the credibility of a claimant's testimony regarding subjective pain or

the intensity of her symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain the credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996)).

In rendering a credibility determination, the ALJ may consider several factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284). If the ALJ relies on these factors and his reliance is supported by substantial evidence, the Court "'may not engage in second-guessing.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

Here, the ALJ considered each of Plaintiff's impairments in turn, first acknowledging the impact of the impairment and adjusting the RFC accordingly, and then finding that the impairment was not as severe as Plaintiff's testimony suggested. (*See* Doc. 9-3 at 17–23). For the sake of brevity, the Court will not summarize every impairment the ALJ discussed; instead, the Court highlights the following examples, as they are most

pertinent to Plaintiff's arguments in this appeal.

Regarding Plaintiff's osteoarthritis of the knees, the ALJ first noted that the objective medical evidence was "to some extent consistent with [Plaintiff's] reports of pain." (*Id.* at 20). The ALJ then cited to the following objective observations made repeatedly by physicians: grossly normal mobility in Plaintiff's knees, grossly intact gait, and generally intact strength, sensation, and reflexes. (*Id.*). The ALJ thus cited to ample objective medical evidence that supported a finding that Plaintiff's osteoarthritis of the knees was not as severe or debilitating as Plaintiff claimed. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis or rejecting the claimant's subjective testimony.").

Regarding Plaintiff's spinal impairments, the ALJ first recited extensive evidence that supported some degree of limitation, which the ALJ included in the RFC determination. (Doc. 9-3 at 20–21). The ALJ then cited to, for example, the following objective medical evidence: negative straight leg raising tests; normal nerve conduction; grossly intact strength, sensation, and reflexes; largely normal gait; and normal range of motion. (*Id.* at 22). The ALJ also noted that Plaintiff declined a magnetic resonance imaging study despite "what appeared to be a significant exacerbation of her cervical degenerative disc disease symptoms." (*Id.*). Thus, the ALJ provided examples of contradictory objective medical evidence and inadequately explained failure to seek available treatment to properly determine that this impairment was not as intense, persistent, or limiting as Plaintiff alleged. *See Carmickle*, 533 F.3d at 1161 (contradictory medical evidence sufficient to discount); *Tommasetti*, 533 F.3d at 1039 (inadequately explained failure to seek treatment a valid factor).

Regarding Plaintiff's migraines, the ALJ acknowledged that her "reports of headaches in the record are generally consistent with [Plaintiff's] reports of migraines," so the impairment warranted some functional limitations. (Doc. 9-3 at 19). However, the ALJ next pointed to inconsistencies in the medical records—namely, normal cranial nerve function—and improvement with treatment—namely, improvement with Topamax,

acupuncture, and trigger point injections. (*Id.*). The ALJ's failure to mention Botox injections explicitly in the same paragraph does not constitute reversible error because an ALJ is not required to discuss every single piece of evidence in the record. *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Moreover, the ALJ indeed acknowledged the Botox injections in the RFC determination, albeit not in the paragraph dedicated to migraines in particular. (*See* Doc. 9-3 at 16).

Given the foregoing, and especially given the limitations the ALJ assessed in the RFC in light of Plaintiff's testimony, the ALJ committed no reversible error in her decision to partially discount Plaintiff's testimony in the RFC determination.

**B. The ALJ's RFC Determination in Light of Plaintiff's Cane Usage**

Plaintiff argues that the ALJ failed to assess the proper RFC prior to May 9, 2021, given the "evidence of Plaintiff's cane and walker use since 2017." (Doc. 12 at 5). Plaintiff points out that in a previous iteration of Plaintiff's case, the Appeals Council remanded, focusing in particular on cane and walker use, but the ALJ on remand nevertheless found Plaintiff's cane not medically necessary. (*Id.* at 6). Plaintiff asserts that the ALJ "ignored an abundance of evidence in the medical records that corroborated her pain complaints and cane and walker use" and emphasizes various instances in the record that Plaintiff argues demonstrate medically necessary cane usage. (*Id.* at 7). Plaintiff concludes that based on cane usage alone and/or cane usage combined with her various other impairments, a light RFC determination was improper. (*Id.* at 8–12).

Defendant argues that the ALJ properly provided substantial evidence to support her conclusion that although Plaintiff became disabled as of May 9, 2021, she was not under a disability before that date. (Doc. 14 at 6). As for cane usage, Defendant first points out that the ALJ cited to various instances in the record in which providers noted that Plaintiff "exhibited a normal gait without mention of using an assistive device." (*Id.* at 7). Defendant further argues that the ALJ "specifically discussed and considered the 2017 walker prescription and actual observations of some cane usage before the established onset date." (*Id.* at 10). Defendant emphasizes that some evidence of cane usage does not

1    satisfy the standard of showing "objective evidence indicating the device was medically
2    necessary." (*Id.* at 11). Finally, Defendant states that the VE testified that "even if Plaintiff
3    needed to use a cane, she could still perform two representative occupations" that existed
4    in significant numbers. (*Id.* at 12).

5         The Court first reiterates its conclusion that the ALJ reasonably partially discounted
6    Plaintiff's subjective symptom testimony and discussion of Plaintiff's impairments
7    relevant to her cane usage in particular. As for medical opinions, just three professionals
8    provided opinions relevant to whether Plaintiff required a cane prior to the established
9    onset date. The Court briefly discusses each in turn.

10        The first relevant opinion is that of Dr. Gregory Hunter. (Doc. 9-3 at 25). The ALJ
11   noted that Dr. Hunter opined that Plaintiff could perform light work with some limitations,
12   based on his findings of a negative straight leg test, normal gait, intact coordination, and
13   negative Romberg testing. (*Id.*). The ALJ did not err in failing to use Dr. Hunter's opinion
14   to support a finding that Plaintiff's cane was medically necessary; indeed, Dr. Hunter's
15   opinion appears to contradict Plaintiff's argument that her cane was medically necessary.

16        The ALJ then discussed the opinion of Dr. H. Samplay. (*Id.* at 25–26). Dr. Samplay
17   opined that Plaintiff could perform "medium work" based on his findings of "relatively
18   benign" asthma and degenerative changes. (*Id.*). Dr. Samplay also opined that Plaintiff's
19   fibromyalgia was a non-medically determinable impairment. (*Id.*). Despite this opinion,
20   the ALJ found that on the full record, Plaintiff's fibromyalgia was a medically determinable
21   impairment and assessed an RFC limited to light, not medium, work. (*Id.* at 26). The Court
22   finds that the ALJ's treatment of Dr. Samplay's opinion was proper because, as with Dr.
23   Hunter's opinion, no part of Dr. Samplay's opinion indicates that Plaintiff's cane was
24   medically necessary. Indeed, the ALJ provided for added limitations which Dr. Samplay
25   did not opine were necessary.

26        The final relevant opinion is that of Dr. Alan Coleman. (*Id.*). Dr. Coleman opined
27   that Plaintiff could perform light work with some limitations and noted findings of
28   generally normal gait. (*Id.*). The ALJ ultimately concluded that Dr. Coleman's opinion

"overestimates [Plaintiff's] abilities for postural activities," so the ALJ limited Plaintiff's RFC further than Dr. Coleman recommended. (*Id.* at 26–27). For the same reasons as discussed above, the Court finds the ALJ's treatment of Dr. Coleman's opinion proper as to whether Plaintiff's cane was medically necessary.

Therefore, because the ALJ reasonably partially discounted Plaintiff's subjective testimony and because the relevant physician opinions do not support a finding that Plaintiff's cane was medically necessary, the Court finds no reversible error on the basis of the ALJ's RFC determination as a whole.

### C.  Minimum Significant Number of Jobs Standard

Plaintiff argues that the ALJ failed to meet her burden of showing at step five that there are jobs that Plaintiff can perform and that there is a significant number of those jobs in the economy. (Doc. 12 at 12). Plaintiff explains that although the ALJ's opinion laid out only a "light hypothetical," the ALJ posed a second hypothetical at the hearing involving cane use; in response, the VE removed one of the three jobs originally provided at step five. (*Id.* at 13). Plaintiff urges the Court to follow the reasoning laid out in *Davis v. Comm'r of Social Security*, No. 1:17-cv-00621-SAB, 2018 WL 1779341 (E.D. Cal. Apr. 12, 2018), in which the district court acknowledged the lack of a bright line rule as to what constitutes a significant number of jobs and discussed previously decided Ninth Circuit Court of Appeals ("Ninth Circuit") cases. (Doc. 12 at 14–15 (citations omitted)). Specifically, Plaintiff points out the district court's discussion of the following Ninth Circuit determinations: (1) 25,000 national jobs is a "close call," but ultimately was sufficient, (2) 10,000 national jobs "may not amount to a significant number of jobs, and (3) 5,104 national jobs is not a significant number, but 25,904 national jobs is a significant number. (*Id.* (citations omitted)).[2] As such, Plaintiff argues, "the job numbers for the two jobs remaining as cited by the VE after the cane use hypo are below the [significant number of jobs] threshold," and the ALJ did not meet her burden at step five.  (*Id.* at 15).

Defendant argues that the ALJ reasonably concluded that Plaintiff could perform

---

[2] The Court notes, and Plaintiff acknowledges, that most of the cases to which *Davis* cites (and which Plaintiff incorporates) are unpublished opinions.

work existing in significant numbers in the national economy before the established onset date. (Doc. 14 at 19). Defendant first emphasizes that much of Plaintiff's argument here is based on her basic argument that the ALJ assessed the incorrect RFC, which Defendant reiterates is unsupported. (*Id.* at 20). Defendant next asserts that, even if the ALJ should have assessed an RFC in which Plaintiff needed to use a cane, the VE's testimony demonstrates that Plaintiff could still have performed jobs that existed in significant numbers in the national economy. (*Id.* at 21–22). Specifically, Defendant points to district court cases in this Circuit in which the court found the following job numbers to be significant: 12,300; 21,000; and 22,000—Defendant states this shows the eroded 20,000 available jobs in this case represents a significant number of jobs. (*Id.* at 21–22 (citations omitted)).

The parties are correct that the Ninth Circuit has not established a bright-line rule for what constitutes a significant number of jobs for the purpose of step five of the disability determination. *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528 (9th Cir. 2014). Thus, the Court looks to exemplary decisions by the Ninth Circuit to determine an estimate for what constitutes a significant number of jobs in the national economy. In *Gutierrez*, the Ninth Circuit stated that a total of 25,000 national jobs presents a "close call," but ultimately determined that 25,000 national jobs represented a significant number of jobs "because it represents a significant number of jobs in several regions of the country." *Id.* at 529. The Court acknowledges the cases to which both parties cite to be, in large part, persuasive but not binding authority, as most cited cases are unpublished and/or from district courts. To that end, when evaluating the ALJ's determination, the Court considers findings in comparable cases, subject to its customary deference to the ALJ's determinations. *Id.* at 528 ("Our precedent defers to an ALJ's supported finding that a particular number of jobs in the claimant's region was significant.").

The Court reiterates that the ALJ made no reversible error in her RFC determination, as discussed above. As such, based on the ALJ's hypothetical that included the Plaintiff's properly determined RFC, the VE testified that Plaintiff could perform representative jobs

that total 129,000 national jobs. (Doc. 9-3 at 29). Under Ninth Circuit precedent finding 25,000 national jobs to be significant, *Gutierrez*, 740 F.3d at 528–29, the Court finds that a total estimate of 129,000 national jobs constitutes a significant number of jobs; therefore, the ALJ committed no reversible error on the basis of the significant number of jobs finding.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 10th day of April, 2024.


James A. Teilborg
Senior United States District Judge